UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
LAWRENCE COLEMAN,

                                  Plaintiff,

-against-

TOWN OF HEMPSTEAD, and TOWN OF HEMPSTEAD
SANITATION DEPARTMENT,

                                  Defendants.
------------------------------------------------------------------- x

**CV-16-3462
(SJF)(SIL)**

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION IN LIMINE

Berkman, Henoch, Peterson, Peddy & Fenchel, P.C.
100 Garden City Plaza
Garden City, New York 11530
(516) 222-6200

# TABLE OF CONTENTS

                                                                                      **PAGE**

PRELIMINARY STATEMENT ............................................................. 1

PROCEDURE HISTORY AND STATEMENT OF FACTS ................................. 1

ARGUMENT ................................................................................. 4

POINT I

    THE RECORDINGS MADE BY PLAINTIFF, AS WELL AS TESTIMONY
    BY SELLITTO AND KILKENNEY, MUST BE PRECLUDED PURSUANT
    TO FRE 801 AND 804 AS SAME ARE HEARSAY TO WHICH
    NO EXCEPTION APPLIES .......................................................... 4

        F.R.E. 801(c) ...................................................................... 5

        F.R.E. 801(d)(2) .................................................................. 6

POINT II

    SHOULD THE COURT DEEM THAT THE RECORDINGS AND/OR
    SELLITTO AND KILKENNEY'S TESTIMONY ARE NOT HEARSAY,
    SAME MUST BE PRECLUDED BECAUSE THEIR PROBATIVE
    VALUE IS SUBSTANTIALLY OUTWEIGHED BY THE UNFAIR
    PREJUDICE TO THE TOWN ...................................................... 11

POINT III

    THE TOWN OF HEMPSTEAD SANITATION DEPARTMENT
    IS A NON-SUABLE ENTITY AND MUST BE DISMISSED AS A
    MATTER OF LAW ................................................................. 14

CONCLUSION ............................................................................ 15

# TABLE OF AUTHORITIES

**CITES**                                                                                                         **PAGES**

*Brown v. Keane*,
355 F.3d 82 (2d Cir. 2004) .................................................... 6

*Buscemi v. Pepsico, Inc.*,
736 F. Sipp. 1267 (S.D.N.Y. 1990) .................................................. 6

*Davis v Velez*,
15 F. Supp. 3d 234 (E.D.N.Y. April 23, 2014) .................................................. 10

*Gilmore v. Schenectady Cty. Sheriffs*,
2018 U.S. Dist. LEXIS 20716 (N.D.N.Y. February 8, 2018) .................................... 14

*Jean-Laurent v. Hennessy*,
840 F. Supp. 2d 529 E.D.N.Y. 2011) .................................................. 12

*Jenkins v. City of New York*,
478 F.3d 76, 93 n.19 (2d. Cir. 2007) .................................................. 14

*Litton Systems, Inc. v. American Tel. & Tel. Co.*,
700 F.2d 785 (2d. Cir. 1983) .................................................. 8, 9, 10

*Northern Oil Co. v. Socony Mobil Oil Co.*,
347 F.2d 81 (2d. Cir. 1965) .................................................. 8

*Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*,
262 F. Supp. 2d 251 (S.D.N.Y. May 13, 2003) .................................................. 6, 7

*Rose v. County of Nassau*,
904 F. Supp. 2d 244 (E.D.N.Y. November 9, 2012) .................................................. 14

*U.S. v. Rioux*,
97 F.3d 648 (2d. Cir. 1996) .................................................. 7

*United States v. Olivieri*,
740 F. Supp. 2d 414 (S.D.N.Y. 2010) .................................................. 5

**STATUTES:**

42 U.S.C. § 1983 ................................................... 1, 11, 14

FED. R. EVID. 401 .................................................. 1, 11, 14, 15

FED. R. EVID. 402 .................................................. 1, 11, 14, 15

FED. R. EVID. 403 .................................................. 1, 11, 12, 13, 14, 15

FED. R. EVID. 801 .................................................. 1, 4, 5, 6, 7, 9, 15

FED. R. EVID. 804 .................................................. 1, 4, 5, 10, 15

WIGMORE, CODE OF EVIDENCE 355 (3d ed. 1942) .......................... 12

WIGMORE, CODE OF EVIDENCE § 443, at 428 (3d. ed. 1942) ................ 12

## PRELIMINARY STATEMENT

Defendants, Town of Hempstead and Town of Hempstead Sanitation Department (hereinafter "Defendants" or "Town") submit this Memorandum of Law in support of their motion *in limine* dated April 16, 2018. Defendants request an order: (1) precluding the audio recordings that were made by Plaintiff and the testimony of certain Town employees pursuant to FED. R. EVID. 801(c)(1), (2), 801(d)(2) and 804(b)(3) because the recordings are out of court statements made by employees that are (a) non-parties to the action; (b) low level supervisory employees who cannot impute liability upon the Town; (c) not agents who spoke within the scope of their employment; and (d) not policy makers; (2) precluding the recordings and testimony by the Town employees pursuant to FED. R. EVID. 401-403 because the probative value of same is substantially outweighed by the unfair prejudice to the Town; and (3) dismissing Defendant, Town of Hempstead Sanitation Department, from the action as it is a non-suable department within the Town of Hempstead.

## PROCEDURE HISTORY AND STATEMENT OF FACTS

Plaintiff filed his Complaint on or about June 23, 2016 alleging violations of his First Amendment rights pursuant to 42 U.S.C. § 1983, including First Amendment retaliation, municipal liability, violation of his First Amendment freedom of assembly and age discrimination. *See* [DE1]. There was no individual with supervisory authority within the Sanitation Department or any policy maker of the Town named as a defendant in the Complaint. The Town filed its' Answer on August 22, 2016. *See* [DE9]. On or about January 10, 2017, Plaintiff withdrew his age discrimination claim. *See* [DE18]. Thereafter, the parties engaged in discovery including depositions of Plaintiff, and non-parties Thomas Metzger and Daniel Miller.

1

Neither party moved for summary judgment and, as such, the Court set the matter down for trial. *See* [DE36].

Plaintiff began his employment with the Town's Sanitation Department on June 27, 2005 as a seasonal Laborer I and resigned at the end of the summer in order to return to college as a full time student. Plaintiff then returned to the Town on January 19, 2006 as a part-time Laborer I where he remained employed with the Sanitation Department until he tendered his resignation on April 9, 2015. During Plaintiff's nine (9) year tenure with the Sanitation Department, he would routinely be switched from a seasonal to part-time and back to seasonal employee.[1] As Plaintiff stated in his deposition, during the peak summer months (April through October), all part-time employees would be permitted to work up to 40-hours per week, and then from October to April, these employees would have their hours reduced to 19-1/2 per week. *See Exhibit A, Coleman Tr. 53:12-15, 55:19-56:3, 57:11-22.* However, when Plaintiff was transferred to the Sanitation Department's Merrick location in 2012, Plaintiff was consistently permitted to work a 40-hour work week. *See id., Coleman Tr. 123:14-25.*

The Town has long been under a consent decree as a result of a class action brought by the Town's union, Civil Services Employees Association ("CSEA") on behalf of James Tosner and all similarly situated part-time employees. CSEA alleged that the Town's part-time employees worked full-time hours but received no benefits associated with full time employment. As a result of the class action, the Town was ordered to create the Part Time Eligibility List aka the Tosner List. Every part-time Town employee that worked 1,600 or more hours in any one calendar year is placed upon the Tosner List in numerical order. Pursuant to the

---

[1] The designation of an employee as seasonal v. part time allows the Department to give employees additional hours during the peak summer months. Thus, a part-time employee, who generally works 19-1/2 hours, will be designated as a seasonal employee during the summer months and is permitted to work up to 40 hours per week. It should be noted that many part-time employees work in excess of 19-1/2 hours which is why many are placed upon the Tosner List within several years of their employment with the Town.

2

consent decree, the Town is required to annually reassign no less than 30 part-time employees on the list to full time positions within the Town (though not necessarily within the employee's department).

In 2014 Plaintiff was placed upon the Tosner List as a result of working in excess of 1,600 hours in 2013. Prior to 2013, Plaintiff did not work more than an average of 23.4 hours per week.[2] In 2014, Plaintiff was number 122 on the Tosner List and in 2015, he moved up significantly to number 71.

In or around March 2015, Plaintiff began to engage certain employees in conversation while recording said conversations without advising that he was doing so. In all, Plaintiff recorded conversations on five (5) different dates: March 17, 2015 (approximately eight (8) minutes and eight (8) seconds in duration), March 18, 2015 (approximately three (3) minutes and thirty (30) seconds in duration), March 31, 2015 (approximately one (1) minutes and twenty (20) seconds in duration) and two (2) recordings of unknown dates (approximately eight (8) minutes and twenty-three (23) seconds in duration and the other, approximately two (2) minutes in duration). These conversations seemingly appear to seek "advice" regarding ways an employee could achieve full time employment.[3] The employees who were the target of the recording, Richard Sellitto ("Sellitto") and Jack Kilkenney ("Kilkenney"), were at that time and continue to be low-level supervisory Sanitation Department employees. Sellitto was hired in October 1989 and at the time of the recording held the title of Sanitation Foreman I. Kilkenney was hired in August 1999 as a part-time employee, made full time in April 2002 and at the time of the

---

[2] Plaintiff's hours from 2006 through 2012 were: 2006: 1,135.6; 2007: 1,249.5; 2008: 1,106.5; 2009: 1,206.5; 2010: 1,240.5; 2011: 1,196.5; and 2012: 1,445.5.

[3] It should be noted that at the time of these recordings Plaintiff was aware that he was on the Tosner List and it would only be a matter of a year or two before he would be made full time. Moreover, Plaintiff had inquired about being made full time to the Union prior to at least three (3) of these recordings and was advised that he was on the Tosner List.

recording held the title Labor Crew Chief I. Upon information and belief, the other unknown and unnamed employees on the recording were all peers of and similarly situated to the Plaintiff.

On February 27, 2015, Plaintiff was served with a Notice of Discipline and Charges for attendance infractions. *See Exhibit B, Notice of Discipline and Charges dated February 27, 2015.* Plaintiff was to serve a fifteen (15) day suspension which was scheduled to begin on April 13, 2015. Plaintiff never served this suspension because on April 9, 2015, within several weeks of the recording of these conversations and four (4) days before beginning his suspension, Plaintiff tendered his resignation. *See Exhibit C, Plaintiff's Resignation.*

## ARGUMENT

### POINT I
### THE RECORDINGS MADE BY PLAINTIFF, AS WELL AS TESTIMONY BY SELLITTO AND KILKENNEY, MUST BE PRECLUDED PURSUANT TO FRE 801 AND 804
### AS SAME ARE HEARSAY TO WHICH NO EXCEPTION APPLIES

Plaintiff recorded several conversations with unwitting co-employees, which included the specific targets of the recordings, Sellitto and Kilkenney, both of whom are low level supervisory employees with the Sanitation Department. Plaintiff seeks to impute liability upon the Town and to offer these recordings against the Town as admissions against interest pursuant to FRE 801(d)(2). The Town is entitled to an *in limine* order prohibiting the introduction of these recordings and/or any trial testimony by Sellitto and Kilkenney as to the substance of these conversations because the out of court statements are hearsay and are barred by F.R.E. 801(c)(1) and (2), 801(d)(2) and 804(b)(3).

In sum and substance, in five (5) separate conversations surreptitiously recorded by the Plaintiff, Town employees Sellitto and Kilkenny, in response to Plaintiff's questions purported to state that in order to get a promotion he needed to "find the right rabbi" and pay people ("That's

exactly how it works ... that's exactly how it works ... that's exactly how it works"). When Plaintiff informed these low level employees of his intention to record conversations with his supervisor and bring them to the media, Sellitto stated, "I got news for you, someway, you'll be on a truck some day and some guy is going to lose he brakes on the street in the next six months, run you over show and then whether you put them in jail or not, you'll be watching the trial from heaven." Plaintiff proposes to offer these, and other statements by these employees as admissions by the Town that in order to be promoted he had to pay political patronage. Manifestly, these statements are abject hearsay as they are out of court statements offered for the truth of the matter at issue [FRE 801(c)], are not statements by a party authorized to speak on the subject or within the scope of the declarant's employment [FRE 801(2)] and do not constitute a statement against the interest of the declarant [FRE 804(b)(3)].

*F.R.E. 801(c)*

Fed. R. Evid. 801(c) defines hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." *See* FED. R. EVID. 801(c). Since 801(c)(1) is not in dispute, as the recordings were not made at either a trial or a hearing, Plaintiff proposes to offer the recordings for the truth of the contents of the conversations as admissions by the Town, and, as such, the recordings are classic hearsay. *See United States v. Olivieri*, 740 F. Supp. 2d 414, 421 (S.D.N.Y. 2010)(holding that an audio disc of an intercepted phone call was inadmissible hearsay). Fed. R. Evid. 802 provides that "[h]earsay is not admissible unless any of the following provides otherwise: a federal statute; these rules; or other rules prescribed by the Supreme Court." None of the exceptions to the prohibition against hearsay applies to the statements set forth in the recordings. Plaintiff, as the party offering the hearsay statements into

5

evidence, has the burden to demonstrate that the recordings come within an exception to the hearsay rule. *See Brown v. Keane*, 355 F.3d 82, 88 (2d Cir. 2004) ("In offering this presumptively barred hearsay evidence, the People had the burden of showing that it came within a sanctioned exception to the hearsay rule.").

*F.R.E. 801(d)(2)*

There are a number of exceptions to the hearsay rule set forth within F.R.E. 801(d). However, the only possible relevance to these statements or basis for their admission in evidence at trial must be premised upon Plaintiff's contention that the statements made by Sellitto and Kilkenney fall specifically within the exceptions set forth in 801(d)(2), <u>An Opposing Party's Statement</u>:

(A) was made by the party in an individual or representative capacity;
(B) is one the party manifested that it adopted or believed it to be true;
(C) was made by a person whom the party authorized to make a statement on the subject;
(D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
(E) was made by the party's coconspirator during and in furtherance of the conspiracy.

*See* FED. R. EVID. 801(d)(2).

Any contention by Plaintiff that the statements made on the recordings by both Sellitto and Kilkenney were made within the scope of their employment, is demonstrably erroneous and must be rejected.

Ordinarily, statements made by an official <u>within the scope of their employment</u> constitute an admission by the employer. *Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*, 262 F. Supp. 2d 251, 260-61 (S.D.N.Y. May 13, 2003) *citing Buscemi v. Pepsico, Inc.*, 736 F. Sipp. 1267, 1270 (S.D.N.Y. 1990)("statements made by the vice president

of personnel on a corporation's hiring and firing practices, printed in a magazine, were 801(d)(2)(D) admissions of the corporation").

Further,

> [i]f an employee/agent was 'an advisor or other significant participant in the decision making process that is the subject matter of the statement,' the statements are considered within the scope of employment. Additionally, the speaker does not have to be the 'final decision-maker,' but simply an advisor or significant participant in the decision-making process.

*Penguin Books,* 262 F. Supp. 2d at 261 *citing U.S. v. Rioux,* 97 F.3d 648, 661 (2d. Cir. 1996).

First, neither Sellitto nor Kilkenney are officials of the Town whose statements could bind the Town – on any level. Sellitto was and is a Sanitation Foreman I. The class specifications for this title indicate that the general duties of a Sanitation Foreman I are "supervises sanitation crews in the collection of waste and refuse of a designated route." *See Exhibit D, Class Specifications for Sanitation Foreman I.* Additionally, the class specifications set forth the complexity of duties which include "under supervision, the duties involve the exercise of judgement in supervising subordinates engaged in the daily collection of waste and refuse." *Id.* Nothing set forth in these job duties provides the authority and/or ability to discipline, hire, fire and/or in general affect the employment of a subordinate. As such, Sellitto in his capacity as a Sanitation Foreman I cannot be construed as an official for either the Sanitation Department or the Town. Nor does such a position vest him with either the apparent or actual authority to speak on behalf of the Town. Therefore, Sellitto's statements whether offered through the recordings or in open court cannot constitute admissions by nor impute liability on behalf of the Town. They are inadmissible hearsay.

Similarly, Kilkenney holds the title of Labor Crew Chief I. The class specifications for that title set forth a general statement of duties: "supervises a crew or group of employees

engaged in a variety of unskilled and semiskilled manual work." *See Exhibit E, Class Specifications of Labor Crew Chief I*. The duties for a Labor Crew Chief I include: "work performed under general supervision . . . involve assigning and supervising subordinate labor-class personnel . . . adheres closely to established priorities and procedures." *Id.* It is clear that Kilkenney possessed no authority or ability to discipline, hire, fire and/or in general, affect the employment of a subordinate and like Sellitto, any comments made by Kilkenney cannot impute liability on the Town.

Second, Sellito and Kilkenney are not "advisers or significant participants" to the Commissioner of Sanitation, the Town Supervisor and/or the Town Board, all of whom have some (Commissioner) or the ultimate authority to affect an employee's employment (Supervisor and Town Board). *See Exhibit F, Metzger Tr. 13:4-8*. There are multiple levels of supervisors that exist between Sellitto and Kilkenney and the Commissioner of Sanitation, the Town Board and the Town Supervisor. Consequently, any statements made by Sellitto and Kilkenney while they were unwittingly recorded by Plaintiff were merely their own sentiments and certainly have no binding authority upon the Town because as low level supervisors they have no apparent authority to speak on behalf of the Town.

As the Second Circuit noted in *Northern Oil Co. v. Socony Mobil Oil Co.*, if there is no showing of authority, capacity or a proper foundation that the employee's statement was "within the apparent range of the employee's authority" the statement must be excluded. 347 F.2d 81, 84 (2d. Cir. 1965). Plaintiff will be unable to show that Sellitto and Kilkenney have any authority or capacity to speak on behalf of the Town.

In the decision, *Litton Systems, Inc. v. American Tel. & Tel. Co.*, the Second Circuit was faced with the question of whether notes taken by Litton's attorney during interviews with

8

Litton's employees wherein these employees discussed wrongdoings on the part of other Litton employees were admissible against the plaintiff. 700 F.2d 785, 816 (2d. Cir. 1983). AT&T argued that "because the multiple levels of hearsay were all made in the course and scope of employment" the statements were not hearsay. As the Court determined, "what some Litton employees said about other employees in the course of [the] investigation does not bring the events [] summarized within the 'scope of his agency or employment' under 801(d)(2)(D)." *Id.*

Assuming, arguendo that Plaintiff argues that he is not presenting "notes which summarize his conversations" but rather presenting the actual words of Sellitto and Kilkenney (and other unknown and unnamed employees heard on the recordings) this cannot serve to remove the hearsay bar to the admission of these statements. As the Second Circuit noted in *Litton*, "'Gossip does not become reliable merely because it is heard in an office rather than a home.' The hearsay which he summarized may well have been inadmissible even if testified to by the employees interviewed." *Id.* at 816-17.

Plaintiff alleges that he was denied full time employment because he refused to be part of and pay money to a Republican club. He seeks to introduce the statements of Sellitto and Kilkenny, both low level supervisors, as admissions to establish his allegation. However, both Sellitto and Kilkenney, though admitting to being politically active at one time, stated on the various recordings that they did not get their promotions as a result of being politically active. For instance, Sellitto stated on recording #13, ". . . I took my test and I didn't get my promotion for two years . . . we are the guys who took a test and got hired off a list . . . ." Similarly, on recording #17, Kilkenney stated, ". . . I never got anything political other than the job – the part time job. Nothing political got me where I am." Because Sellitto and Kilkenney did not receive any benefit from being politically active (which is their First Amendment right to be), their

9

statements are nothing more than conjecture and certainly do not support Plaintiff's allegations of retaliation.

On the majority of the recordings, Sellitto, Kilkenney and other unknown and unnamed employees can be heard talking and laughing about other employees, lawyers, judges, the mafia, etc., boasting about their jobs or expressing discontent for those in authority and interjecting their own suppositions on how or why another employee was in a certain title. These statements are nothing more than the typical musings of disgruntled employees. They are indisputably not admissions made by the Town and lack all probative value. They are mere gossip. See, *Litton Systems, Inc.*, 700 F.2d at 816.

Given that both Sellitto and Kilkenney stated that politics was not the reason they received their title or full time position, the use of these recordings – whether for the truth of the matter asserted or simply to prove that one had to pay the Republican party in order to get ahead – is hearsay, does not fall within any exception to hearsay and must be precluded in their entirety. *See* FED. R. EVID. 804(b)(3).

Because Sellitto and Kilkenney cannot speak on behalf of the Town as they are not agents, policy makers, or a "significant participant," their testimony cannot be construed as or used as an admission against the Town's interests.

Moreover, under FRE 804(b)(3), the Town is not unavailable. "Statements against interest are not excluded by the rule against hearsay if the declarant is unavailable as a witness." *Davis v Velez*, 15 F. Supp. 3d 234, 247 (E.D.N.Y. April 23, 2014) *citing* FED. R. EVID. 804(b)(3). Plaintiff had ample opportunity to depose individuals that could speak on behalf of the Town and did not. To now seek to impute liability against the Town through the use of hearsay recordings

and/or testimony of witnesses, who have no authority to speak on behalf of the Town's interest, should be denied.

## POINT II

### SHOULD THE COURT DEEM THAT THE RECORDINGS AND/OR SELLITTO AND KILKENNEY'S TESTIMONY ARE NOT HEARSAY, SAME MUST BE PRECLUDED BECAUSE THEIR PROBATIVE VALUE IS SUBSTANTIALLY OUTWEIGHED BY THE UNFAIR PREJUDICE TO THE TOWN

Federal Rules of Evidence 401-403 should require this Court to preclude the recordings, as well as any trial testimony by Sellitto and Kilkenney as irrelevant or because "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence." *See* FED. R. EVID. 401-403.

The function of the relevancy inquiry is to require some rational connection between Plaintiff's proffered evidence and the legal claims for which he seeks to recover. While irrelevant evidence is never admissible, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequent in determining the action." FED. R. EVID. 401, 402. Under this analysis, only evidence that has no value as proof of a consequential fact is irrelevant.

Plaintiff should be precluded from offering the recordings and/or seeking the trial testimony of Sellitto and Kilkenney because neither is relevant to Plaintiff's claims of First Amendment retaliation and his First Amendment Freedom to Assemble. This evidence most certainly cannot be proffered to show municipal liability under Section 1983, because the employees who made the statements that were recorded by Plaintiff were not policy makers, were not speaking as agents for the Town and were certainly not speaking within the scope of their employment, as neither had the authority to affect any aspect of Plaintiff's employment.

11

However, even if the Court should find that the recordings and/or Sellitto and Kilkenney's trial testimony might possibly possess some probative value: "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. "In making a Rule 403 determination, courts should ask whether the evidence's probative value is more than matched [by the possibility] . . . that it will divert the jury from the facts which should control their verdict." *Jean-Laurent v. Hennessy,* 840 F. Supp. 2d 529, 537 (E.D.N.Y. 2011) (internal quotations marks omitted).

"Unfairly prejudicial evidence" is generally understood to involve an advantage resulting from an illegitimate method of persuasion based upon the evidence's tendency to suggest decision on an improper or emotional basis, awaken a fixed prejudice, and "dominate the mind of the tribunal and prevent a rational determination of the truth" based upon evidence that is not necessary to "the ascertainment of the truth." *See* WIGMORE, CODE OF EVIDENCE 355 (3d ed. 1942). The concerns of confusion of the issues and "misleading the jury" are addressed to the concern that the "multiplicity of minor issues will be such that the jury will lose sight of the main issue, and the whole evidence will be only a mass of confused data from which it will be difficult to extract the kernel of controversy." *See* 2 WIGMORE, EVIDENCE § 443, at 428 (3d. ed. 1942). Lastly, the considerations of undue delay, waste of time, and needless presentation of cumulative evidence involve matters of trial efficiency, allocation of scarce court time, and the duplication of needless evidence.

All of these factors should cause the Court to find that the probative value, *if any*, of the recordings and/or the trial testimony of Sellitto and Kilkenney is substantially outweighed by

each and every FED. R. EVID. 403 factor. Specifically, the recordings will only serve to unfairly prejudice the Town based upon nothing more than gossip by and between low level supervisors and employees regarding unsubstantiated claims of "paying for promotions," etc. when in fact the two supervisory employees that were recorded received their promotions because of a civil service examination for a tested position or was made full time after several years of working for the Town (despite being politically active). The recorded statements will dominate a jury's mind and prevent them from rationally determining that the truth was that Plaintiff was hired, provided sufficient hours to make the Tosner List (though he never availed himself of the hours until seven years into his employment) and was placed on the Tosner List all *without* being politically active or "paying to play." Secondly, the recordings will mislead the jury and confuse the underlying fact that Plaintiff never had to "pay to play," because though he was given sufficient hours to make the Tosner List, the evidence will show that he was an employee with significant attendance issues, who was disciplined, not because he spoke out against the "culture of the Department," but rather because of his failure to come to work. Third, Plaintiff resigned when he was within two (2) years, or sooner, of being made a full time employee and there is absolutely no evidence that Plaintiff was "forced to resign" out of fear for his safety and such inflammatory statements will only mislead the jury and have a prejudicial effect on the Town. *See generally Coleman Tr. pp. 213-218*. And finally, any trial testimony by Sellitto and Kilkenney will not support Plaintiff's claims as neither had the authority to affect the hours Plaintiff worked, where he worked, any discipline received, or the ability to assign/suggest/recommend Plaintiff to a full time position. Moreover, they have no authority to speak on behalf of the Town, their statements cannot be used against the Town's interest, and will be used merely to divert the jury from the ultimate truth as to why it took Plaintiff seven (7)

13

years to be placed upon the Tosner List. Presentation of this evidence that is both prejudicial and ultimately will not support the Plaintiff's claims, wastes the Court's valuable time and resources.

Given the foregoing, the Town respectfully seeks an Order from this Court precluding the recordings and the trial testimony of both Sellitto and Kilkenney under FED. R. EVID. 401-403.

## POINT III

### THE TOWN OF HEMPSTEAD SANITATION DEPARTMENT IS A NON-SUABLE ENTITY AND MUST BE DISMISSED AS A MATTER OF LAW

"Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Rose v. County of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y. November 9, 2012).

Here, Plaintiff has sued the Town of Hempstead and the Town of Hempstead Sanitation Department. *See Complaint,* ¶¶ 6, 7. He neither identified nor sued a policy maker within the Town nor did he name an individual employee in the Sanitation Department.

The Town of Hempstead Sanitation Department is an administrative arm of the Town and consequently is a non-suable entity. "It is well-settled that municipal departments and offices which have no separate legal identity and cannot sue or be sued are not "persons" under Section 1983." *Gilmore v. Schenectady Cty. Sheriffs,* 2018 U.S. Dist. LEXIS 20716, *8-9 (N.D.N.Y. February 8, 2018) *citing Jenkins v. City of New York,* 478 F.3d 76, 93 n.19 (2d. Cir. 2007).

For this reason, the claims made against the Town of Hempstead Sanitation Department fail as a matter of law. Defendants respectfully request all claims made against the Sanitation Department be dismissed and the caption amended accordingly.

## CONCLUSION

For the foregoing reasons, the Town respectfully requests that the Court issue an order: (1) precluding the audio recordings that were made by Plaintiff and the testimony of certain Town employees pursuant to Fed. R. Evid. 801(c)(1), (2), 801(d)(2) and 804(b)(3) because the recordings are out of court statements made by employees that are (a) non-parties to the action; (b) low level supervisory employees who cannot impute liability upon the Town; (c) not agents who spoke within the scope of their employment; and (d) not policy makers; (2) precluding the recordings and testimony by the Town employees pursuant to Fed. R. Evid. 401-403 because the probative value of same is substantially outweighed by the unfair prejudice to the Town; and (3) dismissing Defendant, Town of Hempstead Sanitation Department, from the action as it is a non-suable department within the Town of Hempstead.

Dated: Garden City, New York
April 17, 2018

Respectfully Submitted,

BERKMAN, HENOCH, PETERSON,
PEDDY & FENCHEL, P.C.

By: _____/s/_____
Joseph E. Macy
Donna A. Napolitano
*Special Counsel to the Defendants*
100 Garden City Plaza
Garden City, New York 11530
(516) 222-6200

TO: Jonathan A. Tand, Esq.
John C. Luke, Jr.
Jonathan A. Tand & Associates
1025 Old Country Road, Suite 314
Westbury, New York 11590
(516) 393-9151