# EXHIBIT "A"

ORIGINAL

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

----------------------------------------x

LAWRENCE COLEMAN,

            Plaintiff,         Index No.

   -against-                  CV-16-3462

TOWN OF HEMPSTEAD, and TOWN OF     (SJF)(SIL)

HEMPSTEAD SANITATION DEPARTMENT,

           Defendants.

----------------------------------------x

                 100 Garden City Plaza
                 Garden City, New York

                 March 16, 2017
                 10:30 a.m.

      Deposition of LAWRENCE J. COLEMAN, the Plaintiff herein, taken by the Attorney for the Defendants, pursuant to Notice, before Bonnie Kreuzburg, a Notary Public of the State of New York.

SEVERIN & ASSOCIATES INC.   (516) 628-1402

```
 1                                                              2
 2      A P P E A R A N C E S:
 3
 4      JONATHAN A. TAND & ASSOCIATES, P.C.
 5      Attorneys for Plaintiff
 6             900 Stewart Avenue, Suite 130
 7             Garden City, New York   11530
 8      BY:    JENNIFER SPIRN, ESQ.
 9
10
11      BERKMAN, HENOCH, PETERSON
12      PEDDY & , P.C.
13      Attorneys for Defendants
14             100 Garden City Plaza, Suite 300
15             Garden City, New York   11530
16      BY:    DONNA A. NAPOLITANO, ESQ.
17
18
19
20      ALSO PRESENT:
21             FRANCESCA CAPITANO, ESQ.
22             Town of Hempstead, Department of
23                    Sanitation
24
25
```

```
 1                    S T I P U L A T I O N S                    3
 2                IT IS HEREBY STIPULATED AND AGREED,
 3      by and between the attorneys for the
 4      respective parties hereto, that the sealing
 5      and filing of the within deposition be waived;
 6      that such deposition may be signed and sworn
 7      to before any officer authorized to administer
 8      an oath with the same force and effect as if
 9      signed and sworn to before a Justice of this
10      Court.
11
12                IT IS FURTHER STIPULATED AND AGREED
13      that all objections, except as to form, are
14      reserved to the time of trial.
15
16                IT IS FURTHER STIPULATED AND AGREED
17      that the within examination and any
18      corrections thereto may be signed before any
19      Notary Public with the same force and effect
20      as if signed and sworn to before this Court.
21
22
23
24
25
```

```
                        L. J. Coleman                    106
      A.      Yes.
      Q.      So notwithstanding that the
department was corrupt, you would still get
full-time employment, correct?
      A.      Correct.
      Q.      And would you be required to pay
someone in order to get that full-time
employment?
      A.      Through going through the list,
no.
      Q.      Did you ever record any of your
conversations with Pete Giordano?
      A.      No.
      Q.      Did you ever record any of your
conversations with Mr. Smith?
      A.      No.
      Q.      Next, you said you spoke to
Charlie Solito.
      A.      Yes.
      Q.      What was your conversation with
Charlie Solito?
      A.      I was also inquiring about a
full-time position with him.
      Q.      So were your conversations with
```

```
 1                    L. J. Coleman                  107
 2   Smith, Giordano and Solito all around the same
 3   time?
 4        A.    Yes.
 5        Q.    Were you thinking that each one
 6   of them would give you a different response?
 7        A.    Yes.  I was hoping.
 8        Q.    Because you weren't satisfied
 9   with the fact that you were whatever number on
10   the list and that you would eventually be made
11   full time?
12        A.    Yes.
13        Q.    So you wanted to be full time
14   immediately, correct?
15        A.    Correct.
16        Q.    You wanted to jump over all the
17   other people who already were on the list who
18   worked 1,600 hours and be made full time,
19   correct?
20        A.    I was there longer than them.
21        Q.    Well, you may have been there
22   longer than them, but you never worked 1,600
23   hours to get on the list, correct?
24        A.    Correct.
25        Q.    Because that is one of the
```

```
                        L. J. Coleman                    133
```

this Notice of Discipline and Charges?

        MS. NAPOLITANO: Withdrawn. Let me ask a better way.

    Q.    Did you make the decision to resign your position with the Department of Sanitation due to the issuance of this Notice of Discipline and Charges on 2/27/15?

    A.    This was part of my reason.

    Q.    What were the other parts of your reason?

    A.    The fact that I wasn't full time.

    Q.    However, when you resigned, you knew that you were probably within a year of being made full time, correct, based on your position on the Tosner list, correct?

    A.    No. I was told two years.

    Q.    Who told you that?

    A.    Rita Miller.

    Q.    So Rita Miller told you it would be another two years.

        Do you know if there would have been any possibility that that would have happened sooner than two years?

    A.    No.

```
                        L. J. Coleman                      134
    Q.    So you had worked already ten
years for the Town and you were not willing to
wait another two years to be made full time,
which is what you wanted?
    A.    Correct.
    Q.    And no one told you to resign,
correct?
    A.    Correct.
    Q.    This discipline, the 2/27/15
discipline, did you appeal or grieve this
discipline with the union?
    A.    I don't recall.
    Q.    Did you speak to anyone in the
union; Pete Giordano Charlie Solito or A. J.
Smith with regard specifically to this
discipline?
    A.    Specifically, I don't remember.
    Q.    Did you advise any one of them,
and when I say them, I mean Smith, Giordano or
Solito, that you were going to resign?
    A.    No.
          MS. NAPOLITANO:  This is a good
    time to stop.
          (Whereupon a luncheon recess was
```

```
 1                      L. J. Coleman              221
 2       Q.      On one of the recordings, and I
 3  don't know who said this to you because I
 4  can't identify the voices, someone --
 5            MS. NAPOLITANO:  Withdrawn.
 6       Q.      Who is Tommy Catch?
 7       A.      Tommy Catch, he is a supervisor.
 8  I believe more than supervisor.  I'm not sure
 9  I have his exact title.
10       Q.      So when he's referred to on the
11  recordings as Tommy Catch, whoever is speaking
12  is referring to?
13       A.      To Thomas Cacciapaglia.
14            MS. NAPOLITANO:  Off the record.
15            (Whereupon a discussion was held
16       off the record.)
17       Q.      One of the recordings that you
18  made, someone, and I don't know who it is,
19  said to you I got news for you, some day,
20  somehow you'll be on a truck some day, and
21  some guy is going to lose his brakes on the
22  street, and in the next six months, run you
23  over, and whether you put them in jail or not,
24  you will be watching the trial from heaven."
25  And there's laughing.
```

```
 1                    L. J. Coleman                    222
 2              Did you take that as a direct
 3    threat against you?
 4         A.   Yes.
 5         Q.   Do you remember who said that to
 6    you?
 7         A.   Yes.
 8         Q.   Who said that to you?
 9         A.   Richard Solito.
10         Q.   And was he talking about if this
11    information, these recordings would get out,
12    this is what would happen?
13         A.   Yes.
14         Q.   Do you recall, as you sit here
15    today, who else was with you at the time that
16    you made this recording that laughed after
17    that comment was made?
18         A.   Yes.
19         Q.   And who was it?
20         A.   Donald Eduard, Rafael Christian
21    and Mitchell Thompson.
22         Q.   Mitchell Thompson, you said?
23         A.   Yes.
24         Q.   Do you recall where you were?
25         A.   We were at a park inside of a
```

```
                         L. J. Coleman                      223
```

  building at a park in East Meadow.

      Q.    Speno Park?

      A.    I'm not sure if it was Speno. I don't recall exactly.

      Q.    And how did this conversation arise? What were you talking about that resulted in Rich Solito saying some day you are going to be on the back of a truck and they're going to lose their brakes?

      A.    Conversations like this would happen on almost a daily basis between peers and superiors in various situations throughout -- throughout my tenure with the Town. But to recall specifically how that conversation came about, I don't recall exactly.

      Q.    And Donald Eduardo, Raphael Christian and Mitchell Thompson, are any of those supervisors?

      A.    No.

      Q.    So they were all peers with you?

      A.    Yes.

      Q.    Were they contributing to the conversation that you were having with Rich?

```
                        L. J. Coleman                    224
  2        A.      Yes.
  3        Q.      They were?
  4        A.      Yes.
  5        Q.      They weren't just sitting there?
  6        A.      No.
  7        Q.      Were they saying similar things
  8   as Mr. Solito was saying?
  9        A.      No.  They were mainly, I guess,
 10   curious as to the information he was sharing.
 11   Somewhat surprised by the -- by what he was
 12   saying, coming from somebody on the inside.
 13        Q.      Now, just prior to Mr. Solito
 14   saying that you would be on a truck some day,
 15   you said to him, so you tell me, if I bring a
 16   recording in, bring in Channel 12 news up
 17   here, and then he said what he said?
 18        A.      That wasn't me who said that.
 19        Q.      Okay.  Who said that?
 20        A.      Donald Eduard said that.
 21        Q.      Donald said that, okay.
                   So Solito was reacting to
 23   Mr. Eduardo saying if I bring up News 12,
 24   what's going to happen?
 25        A.      Correct.
```

```
1                    L. J. Coleman                    229
2    recordings?
3         A.    Those are the only ones I have.
4    If there was -- no, those were the only ones
5    that I have that I recorded.
6         Q.    So you weren't actually recording
7    all of your conversations, then as you just
8    testified to?
9         A.    Any time I thought I was going to
10   be interacting with any of my superiors, yes,
11   I began recording.
12        Q.    And what was the purpose of
13   recording your supervisors?
14        A.    I felt like I needed evidence to
15   back up my claims.
16        Q.    So during the period of time that
17   you were recording, it was prior to your
18   resignation?
19        A.    Yes.
20        Q.    So you had made the decision that
21   prior to resignation you were going to bring a
22   lawsuit against your employer?
23        A.    I hadn't come to a confirmed -- a
24   100 percent positive decision about -- about
25   resigning or bringing a lawsuit at that time.
```

```
 1                    L. J. Coleman                    237
 2       are closing the transcript for today to
 3       be picked up on March 24th.
 4                  (Time Noted:  5:20 p.m.)
 5
 6
 7       _____
 8                  LAWRENCE J. COLEMAN
 9
10
11       Subscribed and sworn to before me
12       this 3    day of August   , 2017.
13
14
15       _____
                    NOTARY PUBLIC
16
17            HOPE SENZER GABOR
           Notary Public, State of New York
18              No. 01GA4843233
           Qualified in Nassau County
           Commission Expires August 31, 20 17
19
20
21
22
23
24
25
```

# ERRATA SHEET

CASE NAME: ~~Colman~~ Coleman v. Town of Hempstead, et al.
DATE OF DEPOSITION: March 16, 2017
NAME OF WITNESS: Lawrence Coleman

| PAGE | LINE | CHANGE | REASON |
|---|---|---|---|
| 171 | 24 | word away to Anand | |

_____
Lawrence Coleman

SUBSCRIBED AND SWORN TO BEFORE
ME THIS 3 DAY OF ~~May~~ August, 2017

_____
NOTARY PUBLIC

HOPE SENZER GABOR
Notary Public, State of New York
No. 01GA4843233
Qualified in Nassau County
Commission Expires August 31, 2017

Page # 197 Lines 12-14  I dont believe the town made this document up regarding drug testing but I believe they purpousfully moved my name to the top of the list at that time.